UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARGONAUT INSURANCE COMPANY : | |
| : | |
| Plaintiff : | |
| : | CASE NO. |
| v. : | |
| : | |
| MACTON CORPORATION; : | |
| GARY BRIDGMAN, : | |
| EXECUTOR/FIDUCIARY : | |
| OF THE ESTATE OF : | |
| PETER MCGONAGLE; and : | |
| MARY JO MCGONAGLE : | |
| : | |
| Defendants : | NOVEMBER 29, 2018 |

## **_COMPLAINT_**

### I.    **NATURE OF ACTION**

1. Plaintiff Argonaut Insurance Company ("Surety") wrote surety bonds ("the Bonds") at the request of Defendant Macton Corporation ("Principal" or "Macton"). In consideration for the issuance of the Bonds, Principal, Peter McGonagle and Mary Jo McGonagle executed a General Indemnity Agreement ("GIA") under which they agreed, *inter alia*, to indemnify Plaintiff from losses incurred as a result of writing the Bonds and to post collateral security acceptable to Surety equivalent to such amount that Surety, in its sole judgment, deems sufficient to protect it from any potential or anticipated losses. Surety has received notice that liability is being asserted against it on one of the Bonds and has been advised that Macton's manufacturing operations are currently in hiatus. Surety has made demand on Defendants to post cash collateral and disclose certain financial information pursuant to the terms of the GIA. Despite such demand, Defendants

have failed to post collateral security and have failed to provide the requested financial information. Surety has brought this action to vindicate its rights under the GIA and the common law to indemnity for losses incurred, collateral security for pending exposures, and disclosures of financial information.

## II. JURISDICTION

2. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332. The the parties are of diverse citizenship and the amount in controversy is in excess of $75,000 exclusive of interest and costs.

## III. PARTIES

3. Plaintiff Argonaut Insurance Company ("Surety") is incorporated in the State of Illinois and has its principal place of business in San Antonio, Texas. Plaintiff is authorized to write surety bonds in the State of Connecticut.

4. Defendant Macton Corporation is incorporated in the State of Connecticut and has its principal place of business in Oxford, Connecticut.

5. Defendant Mary Jo McGonagle is a citizen of the State of Connecticut.

6. Peter McGonagle was a citizen of the State of Connecticut until he passed away on or about October 23, 2018. His decedent estate is pending in the Fairfield Probate Court.

7. Defendant Gary Bridgeman ("Executor") is being sued in his official capacity as fiduciary of the estate of Peter McGonagle. Probate court records indicated that Executor's business address is: 100 Mechanic Street #80 Southbridge, MA 01550.

## IV. CAUSES OF ACTION

A. **COUNT ONE (Contractual Indemnification/Collateral Security)**

1-7. Paragraphs 1 through 7 in Parts One through Three of this Complaint, supra, are incorporated herein as Paragraphs 1 through 7 of Count One.

8. Defendant Principal, Defendant Executor's decedent Peter McGonagle, and Defendant Mary Jo McGonagle (referred to collectively as "Indemnitors") were each signatories of a General Indemnity Agreement ("GIA") running in favor of the Surety dated on or about September 6, 2017. A true copy of the GIA is attached hereto as Exhibit 1.

9. The GIA imposes on the Indemnitors multiple obligations including but not limited to the following:

   a. The Indemnitors are obligated to indemnify Surety from "any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s)." The term "Losses" is defined as "any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with Investigation, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses," (d.) all costs and expenses incurred in connection with enforcing the obligation of the indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement."

   b. The Indemnitors are obligated to post collateral security upon demand by Surety. "Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. . . The Indemnitors acknowledge that the Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand. Accordingly, the Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and

3

collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement."

c. The Indemnitors are obligated to provide "reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same" upon demand of the Surety "[i]n the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring losses."

d. The Indemnitors are obligated to provide access to the Surety to "credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection.

10. The Indemnity Agreement indicates that the Indemnitors agreed to the aforementioned GIA provisions "[a]s an inducement to the Surety and in consideration of Surety's execution or procurement of the Bond(s), the Surety's refraining from cancelling one or more Bond(s), and/or the Surety's assumption of one or more Bond(s) and for other good and valuable consideration, the receipt and sufficiency of which the Indemnitors" acknowledged.

11. In reliance on the Indemnitors' execution of the GIA, Surety issued several surety bonds to Principal, including but not limited to the following:

    a. Bond #CMGP0000706

        i. Obligee: Hensel Phelps Construction Co.
        ii. Project Description: No.5017101 Link Operations Maintenance Facility: East Design Build
        iii. Bond Amount: $2,785,400

    b. Bond #CMGP0000984
        i. Obligee: Sound Transit
        ii. Project Description: Furnish & Install Light Rail Vehicle (LRV) Lift at Operations & Maintenance Facility (OMF)
        iii. Bond Amount: $693,630
    c. Bond #CMGP0001033
        i. Obligee: Rizzo Corporation

        ii.       Project Description: Truck Rotator Upgrade – 11976-2 (Metro North-New Haven CCO Shop).
        iii.      Bond Amount:  $207,382.50

(referred to collectively as  "the Bonded Projects", the Bonded Contracts", or "the Bonds").

12.      Bond #CMGP0000706 was issued by Surety in favor of Hensel Phelps Construction Co. ("Hensel Phelps") as obligee. The bond is entitled "Supply Bond for Direct Suppliers," and obligates Surety and Principal to indemnify and save harmless Hensel Phelps "from and all loss, damage, and expense, including interest, costs, and attorney's fees, which the said Obligee may sustain by reason of the Principal's failure" to perform all obligations under the Contract. A copy of the Hensel Phelps Bond is attached hereto as Exhibit 2.

13.      The Surety received an October 30, 2018 letter from Hensel Phelps stating that  Principal "is in default of its obligations under the Purchase Agreement between Hensel Phelps Construction Co. and Macton because Macton has failed to timely fabricate and deliver 'vendor provided embeds' to the proper site in accordance with the Purchase Agreement.". The letter states that in order to cure the default, Principal Macton must undertake several corrective measures, and that "[i]f Macton fails and refuses to implement the corrective measures described above within three (3) days of the date of receipt of this letter, Hensel Phelps may invoke the provisions of Standard Condition 7 of the above referenced Purchase Agreement, which authorizes Hensel Phelps to cancel the Purchase Agreement and make demand on Macton's surety to remedy the default by promptly satisfying Macton's obligations under the Agreement."

14.      Bond #CMGP0000984 was issued by Surety in favor of the Central Puget Sound Regional Transit Authority dba Sound Transit ("Sound Transit") as obligee. The

bond is entitled "Payment Security Bond," and provides that "[i]f Sound Transit declares any work performed or products delivered as unacceptable for which progress payment(s) was made by Sound Transit to Principal, and upon Sound Transit notice to Surety, Surety shall within 14 calendar days of said notice pay Sound Transit such progress payment amount(s) paid by Sound Transit to Principal for such unacceptable work performed or products delivered." A copy of the Sound Transit Bond is attached hereto as Exhibit 3.

15. Bond #CMGP0001033 was issued by Surety in favor of Rizzo Corporation ("Rizzo") as obligee. The bond is entitled "Payment Bond," and obligates the Surety and Principal to Rizzo to pay for labor, materials and equipment furnished for use of the construction contract subject to the terms of the bond. The bond requires, *inter alia*, the Surety and Principal to defend, indemnify and hold harmless Rizzo against any duly tendered claim, demand or suit. A copy of the Rizzo Bond is attached hereto as Exhibit 4.

16. Surety received a letter from Rizzo dated November 14, 2018 titled "M301-0121 - Central Distribution Warehouse (CDW), Railyard New Haven. Bond No. CMGP0001033 'Notice of Potential Claim'." The letter states "[a]s a result of the untimely death of the owner, Rizzo and D.O.T, CT and Metro North Railroad (MNR) became very concerned about the status of the product that Macton was building for the MNR maintenance facility." Rizzo further states in the letter that on October 23, 2018, after Macton cancelled the start date for installation of the rotators, a conference call was held with Macton, during which Rizzo learned the units contracted for were not nearly complete. Rizzo demanded it be permitted to inspect the product it had paid for to determine the status. Shortly after the call, Macton's owner passed away, and Rizzo states

it has been unable to visit the facility and verify the status of the project. The letter states "please consider this notice that we are concerned about Macton's ability to meet its contractual Obligation."

17. Surety understands that Principal Macton is not presently conducting operations and that work on the Bonded Contracts has been interrupted.

18. Upon receipt of the October 30, 2018 correspondence from Hensel Phelps and the November 14, 2018 letter from Rizzo, Surety sent a demand letter to Principal and Indemnitors dated November 19, 2018. The letter states in pertinent part that Surety is demanding that the Indemnitors deposit with the Surety cash collateral in the amount of **$3,686,412.50**, reflecting the aggregate amount of the Bonds. The letter states that the aforementioned amount is warranted to discharge any Losses and/or to protect Surety from any potential or anticipated Losses in connection with the Bonds. The letter also requests that the Principal and Indemnitors disclose to the Surety their financial records sufficient to allow the Surety to determine and document each party's current assets and liabilities, current sources of income, and amounts of such income. In addition, the Surety demanded in its letter that the Principal provide a documented financial accounting for each of the Bonded Projects, indicating the percent complete approved by the Project owner, the amount of contract funds disbursed to Principal, and the amount of the undisbursed contract funds. The letter specified that this accounting should be accompanied by payment applications/invoices submitted to the owners, including those paid and unpaid, and documents evidencing payments made or withheld in response to such applications.

19. The Indemnitors have failed to post the demanded collateral security, and have failed to provide the aforementioned requested records.

20. Under the GIA, each Indemnitor is obligated to, *inter alia*, to post collateral security upon demand of Surety, provide financial records upon demand, and indemnify the Surety for all losses incurred and to be incurred as a result of the Surety having issued the Bond. Indemnitors are therefore in breach of their obligations under the GIA by failing and refusing to post cash collateral security in the amount necessary to discharge any Losses and/or to protect Surety from any potential or anticipated Losses in connection with the aforementioned Bonds.

21. Surety lacks an adequate remedy at law and will sustain irreparable injury if the collateral security provisions of the GIA are not specifically enforced. Indeed, the Surety understands that the individual Indemnitor has recently listed real property for sale, which risks impairing the Surety's opportunity to identify assets and attach same.

22. Surety has incurred legal fees, investigation costs, and other expenses in connection with its efforts to enforce the provisions of the GIA.

**B.     COUNT TWO (Common Law Exoneration)**

1-22. Paragraphs 1 through 22 in Count One are incorporated herein as Paragraphs 1 through 22 of Count Two.

23. Principal is obligated under the common law to post funds with the Surety necessary to exonerate the Surety from its current and anticipated exposures.

24. Principal is in breach of its common law duty of exoneration by failing and refusing to post funds with the Surety necessary to exonerate the Surety from its current and anticipated exposures.

### C.  COUNT THREE (Quia Timet)

1-22.   Paragraphs 1 through 22 in Count One are incorporated herein as Paragraphs 1 through 22 of Count Three.

23.   Principal is obligated under the common law to post cash security with the Surety to collateralize the Surety from its exposure under the Bonds.

24.   Principal is in breach of the common law doctrine of quia timet by failing and refusing to collateralize the Surety for its current and anticipated exposures under the Bonds.

25.   Plaintiff lacks an adequate remedy at law and will sustain irreparable injury if the Indemnitors are not required to post collateral to secure against the Surety's potential exposures.

### D.  COUNT FOUR (Disclosure of Financial Information)

1-22.   Paragraphs 1 through 22 in Count One are incorporated herein as Paragraphs 1 through 22 of Count Four.

23.   Each Indemnitor is obligated under the GIA to disclose individual financial records and related information to the Surety upon demand.

24.   The Indemnitors have made certain financial disclosures to the Surety, but have refused to disclose other financial information and documents requested by the Surety. The information and documents that have been withheld are critical in order for the Surety to fully enforce its rights to indemnity and the posting of collateral security.

25.   The Indemnitors are in breach of the GIA due to their failure and refusal to disclose to the Surety financial records sufficient to allow the Surety to fully enforce its rights under the GIA, including specifically the Surety's right to collateral security.

26. Surety lacks an adequate remedy at law and will sustain irreparable injury if the financial disclosure provisions of the GIA are not specifically enforced.

WHEREFORE, Surety prays that this Court:

1. Award monetary damages;

2. Issue an order requiring specific performance of the collateral security provisions of the GIA;

3. Issue an order requiring specific performance of the financial disclosure provisions of the GIA;

4. Enter preliminary and permanent injunctions ordering Indemnitors to post collateral security in the amount of $3,686,412.50 representing the value of the Surety's exposure on the Bonds, including but not limited to claims payments, costs, attorney's fees and interest;

5. Enter preliminary and permanent injunctions ordering Indemnitors to fully disclose to the Surety their financial records sufficient to allow the Surety to determine and document each party's current assets and liabilities, current sources of income, and amounts of such income; and a documented financial accounting for each of the Bonded Projects, indicating the percent complete approved by the Project owner, the amount of contract funds disbursed to Principal, and the amount of the undisbursed contract funds, accompanied by payment applications/invoices submitted to the owners, including those paid and unpaid, and documents evidencing payments made or withheld in response to such applications;

6. Award attorney's fees and costs;

7. Award Interest; and

8. Enter such other relief as justice requires.

PLAINTIFF
ARGONAUT INSURANCE COMPANY

/s/ Matthew M. Horowitz
Matthew M. Horowitz (ct 01747)
Erin E. Canalia (ct 30489)
Wolf, Horowitz, Etlinger, LLC
750 Main Street, Suite 606
Hartford, CT 06103
(860) 724-6667
mhorowitz@wolfhorowitz.com
ecanalia@wolfhorowitz.com

171839