UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARGONAUT INSURANCE COMPANY,
*Plaintiff*,

v.

No. 3:18-cv-01949 (JAM)

MACTON CORPORATION *et al.*,
*Defendants*.

# ORDER TO SHOW CAUSE RE
# MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff Argonaut Insurance Company ("Argonaut") brings this indemnity action against Macton Corporation ("Macton") and Gary Bridgman in his capacity as executor of the estate of Macton President and CEO Peter McGonagle, requesting recovery for obligations Argonaut allegedly incurred pursuant to three surety bonds it issued to Macton. Both defendants have failed to plead or otherwise defend this action, and their defaults were entered on October 7, 2019. Doc. #75. Accordingly, Argonaut has applied for default judgment against each defendant. Docs. #78, #79. On the basis of the Court's review of Argonaut's motion, it has concerns that Argonaut should address before the Court will be prepared to grant its motion for default judgment.

## BACKGROUND

The following facts are taken from Argonaut's complaint and are accepted as true for the purpose of ruling on its motions for entry of default judgment.

In 2017, Argonaut issued three surety bonds to Macton Corporation in a total amount of $3,686,412.50. Doc. #1 at 4-5 (¶ 11).[1] As a condition of Argonaut's issuance of these bonds,

---

[1] *See* Docs. #1-2 (Ex. 2, Bond No. CMPG0000706), #1-3 (Ex. 3, Bond No. CMGP0000984), #1-4 (Ex. 4, Bond No. CMGP0001033).

1

Macton's President and CEO Peter McGonagle executed a General Indemnity Agreement ("GIA"), wherein Macton agreed to indemnify Argonaut for any losses, costs, or expenses incurred as a result of writing the bonds. Docs. #1 at 3-4 (¶¶ 8-9), #1-1.

In October 2018, McGonagle passed away, and Gary Bridgman was appointed as a fiduciary of his estate. Doc. #1 at 2 (¶¶ 6-7); *see also* Doc. #78 at 4 (¶ 6). After McGonagle's death, Macton's operations appeared to cease. Doc. #1 at 7 (¶ 17). Argonaut subsequently received, and paid out, claims on the three bonds it had issued to Macton, which resulted in losses of approximately $2 million. *Id*. at 5-7 (¶¶ 12-16). In addition to these losses, Argonaut incurred investigation costs, as well as attorney's fees, in the course of administering the claims under the bonds. *Id*. at 8 (¶ 22). Although Argonaut made repeated demands for indemnity under the GIA to Macton Corporation and the McGonagle estate, neither responded. *Id*. at 7-8 (¶¶ 18-19).

In November 2018, Argonaut filed this suit against Macton and Bridgman in his capacity as executor of McGonagle's estate, seeking monetary damages, interest, attorney's fees and costs, and "such other relief as justice requires." *Id*. at 10. Both defendants were served with summones on December 4, 2018. Docs. #18, #19. But neither filed an appearance in court or responded to Argonaut's complaint. Argonaut moved for a default entry, Docs. #73, #74, which was granted on October 7, 2019, Doc. #75. Argonaut now moves for default judgment against both defendants. Docs. #78, #79.[2]

## DISCUSSION

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn*

---

[2] After filing two motions for default judgment on October 24, 2019, Docs. #76 and #77, on October 28, 2019, Argonaut filed amended motions, Docs. #78 and #79.

*Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). On a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009). Nevertheless, a court is still "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Mickalis Pawn Shop*, 645 F.3d at 137. Following such a determination, a court must also determine the amount of damages to be awarded; to do so, it may conduct a hearing or it may make such a finding on the basis of documentary evidence if damages are ascertainable with reasonable certainty. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

As an initial matter, Argonaut has filed two motions for entry of default judgment, one against Bridgman in his capacity as executor of McGonagle's estate and one against Macton. Docs. #78, #79. Although Argonaut's complaint does not appear to take the position that defendants are jointly and severally liable, the Court will consider both motions as collectively seeking entry of judgment against Macton and the estate of McGonagle, jointly and severally, in the amount of Argonaut's claimed damages.

Argonaut seeks recovery pursuant to the GIA for obligations incurred in relation to three surety bonds it issued to Macton, representing that it has made payments on the bonds and incurred losses of $2,210,702.16. Docs. #1 at 5-7 (¶¶ 12-16); #78-1 at 4 (¶¶ 13-14) (Shear Affidavit).[3] Argonaut further represents that it has incurred $117,823.03 in related "investigation costs, litigation costs, and attorney's fees." *Id*. at 4-5 (¶ 15). In all, Argonaut claims losses of $2,217,814.03, and seeks this amount in damages from both Macton Corporation and the estate of McGonagle. *Id*. at 6 (¶ 24).

---

[3] Argonaut's two motions, Docs. #78 and #79, are nearly identical, with the same exhibits attached to each. Accordingly, I will reference only one of the motions throughout this ruling.

3

In support of entry of default judgment, Argonaut submits an affidavit from its attorney, Stephanie Shear, attesting to Argonaut's losses and associated incurred costs, including attorney's fees. Doc. #78-1 (Shear Affidavit). Argonaut supplements its motion with the executed GIA, Doc. #78-2 at 1 (Ex. 1), and a case record from state probate court that lists Gary Bridgman as a fiduciary of Peter McGonagle's estate, *id*. at 8 (Ex. 2). Finally, also attached to Argonaut's complaint is documentation relating to the three bonds issued to Macton. Docs. #1-2, #1-3, #1-4.

Notwithstanding these submissions and materials, I have questions about the basis for liability and damages as follows:

(1) **Bond agreements**. The basis of Argonaut's claim is that it issued bonds for Macton Corporation, which agreed to indemnify Argonaut for any losses. Yet a review of the documentation of all three bonds reveals that none are signed by Macton or McGonagle. *See* Docs. #1-2 (Ex. 2), #1-3 (Ex. 3), #1-4 (Ex. 4). In contrast, the GIA bears the signature of McGonagle (on behalf of Macton). *See* Doc. #1-1 at 6 (Ex. 1). Argonaut seeks to recover damages incurred in relation to these three bonds, all of which were allegedly conditioned on the GIA. Although Argonaut submitted letters from Macton's counterparties regarding two of the three bonds, Doc. #11-1 at 23 (Ex. 4), 36 (Ex. 7), as well as Argonaut's own demand letter to Macton and Bridgman seeking indemnity under the GIA, Doc. #11-1 at 38 (Ex. 8), it is unclear whether the unsigned bonds are binding on Macton or the estate of McGonagle as a matter of law. *See AF Holdings, LLC v. Olivas*, 2014 WL 4782816, at *2 (D. Conn. 2014) (the district court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

Argonaut is therefore requested to submit fully executed agreements for all three bonds claimed by Argonaut to have been issued to Macton and for which Argonaut now seeks indemnification. If signed agreements are not available, Argonaut is requested to explain why they are not available and on what basis the Court may rule in its favor in the absence of signed agreements.

(2) **Bond No. CMGP0000706**. Argonaut represents that one of the three bonds issued to Macton Corporation, Bond No. CMGP0000706, was in the amount of $2,785,400. Doc. #1 at 4 (¶ 11); *see also* Doc. #78-1 at 2 (¶ 5) (Shear Affidavit). Yet the bond, submitted as an exhibit to its complaint by Argonaut, states it was in the amount of $2,262,400.00. *See* Doc. #1-2 at 2 (Ex. 2). Since Argonaut's claimed losses rest in part on the total amount owed under the three bonds issued to Macton, Argonaut is requested to explain this apparent discrepancy and how, if at all, the loss amount claimed by Argonaut is affected.

(3) **Losses**. Argonaut represents that it has incurred losses totalling $2,217,814.03 on the three bonds issued to Macton, submitting its attorney's affidavit as evidence. Doc. #78-1 at 5 (¶ 16) (Shear Affidavit). Yet, by the Court's calculations, the sum total of the amount that Argonaut represents it has paid out to claimants and the amount it incurred in associated costs and fees is equal to $2,328,525.19. In light of this apparent inconsistency, and because Argonaut has not put forth documentation that sufficiently explains or describes the basis and calculation for its claimed losses, the Court cannot with reasonable certainty ascertain the appropriate damages. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a court must conduct an inquiry into the amount of damages "with

5

reasonable certainty"); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) ("a single affidavit only partially based on real numbers[ ]" would be insufficient for a determination of damages). Argonaut is requested to explain how the amount it claims as losses was calculated, along with supporting documentation.

(4) **Attorney's Fees**. Argonaut also seeks court-awarded attorney's fees, representing it has incurred $117,823.03 in "investigation costs, litigation costs, and attorney's fees in administering and investigation the claims under the bonds and seeking recovery for its losses." Doc. #78-1 at 4-5 (¶ 15). As an initial matter, although Argonaut provides a breakdown of these costs per bond, Argonaut does not provide the relative share of investigation costs versus attorney's fees. And rather than submitting any contemporaneous billing records to substantiate litigation costs, Argonaut submits only an affidavit from its attorney attesting to the total amount. Doc. #78-1 (Shear Affidavit). In order to award attorney's fees, the Court must have sufficient evidence to determine whether they are reasonable. In the Second Circuit, "any attorney ... who applies for court-ordered compensation ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Argonaut is therefore requested to submit evidence to substantiate its claim for attorney's fees.

(5) **Double recovery**. As noted above, Argonaut's complaint does not expressly state that defendants are jointly and severally liable for its claims. But a review of the GIA reveals that the agreement does include a provision holding all indemnitors jointly

and severally liable. *See* Doc. #1-1 at 2. Nevertheless, Argonaut has filed two motions for default entry against Macton and the estate of McGonagle, asking this Court to grant default judgements against the estate and Macton, *each* in the amount of $2,217,814.03. Docs. #78 at 6 (estate), #79 at 6 (Macton). The Court is unable to ascertain the basis for Argonaut's apparent request to recover an amount that is double its claimed losses. The Court is considering whether to enter judgment against Macton and the estate of McGonagle, jointly and severally, in the amount of Argonaut's claimed damages, assuming they are properly evidenced. But Argonaut is requested to provide the Court with the basis for its stated theory of recovery, or, in the alternative, to move to amend its motions for default judgment accordingly.

## CONCLUSION

For the reasons set forth above, the Court has questions concerning the basis for an award of default judgment. Argonaut shall file a response to this order to show cause by **January 20, 2020**.

It is so ordered.

Dated at New Haven this 6th day of January 2020.

/s/ *Jeffrey Alker Meyer*

Jeffrey Alker Meyer
United States District Judge